UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

ORLANDO CABRERA                     :    BK No. 09-10758
ELVIRA M. CABRERA                          Chapter 7
            Debtors
- - - - - - - - - - - - - - - - - -x

STACEY B. FERRARA, TRUSTEE          :
            Plaintiff
v.                                  :    A.P. No. 11-1018

ORLANDO R. CABRERA, JR.             :
ELIZABETH C. CABRERA
DANIEL CABRERA                      :
ROSELIA CABRERA
            Defendants
- - - - - - - - - - - - - - - - - -x


### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT, AND REOPENING DISCOVERY AND SCHEDULING REMAINING ISSUES FOR TRIAL

APPEARANCES:

        Peter J. Furness, Esq.
        Attorney for Plaintiff/Trustee
        SINAPI, FORMISANO & COMPANY, LTD.
        100 Midway Place, Suite 1
        Cranston, Rhode Island 02920

        Robert B. Jacquard, Esq.
        Attorney for Defendants
        231 Reservoir Avenue
        Providence, Rhode Island 02907




**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 09-10758; A.P. No. 11-1018

Heard on the Defendants' Motion for Summary Judgment on all Counts, and on Trustee/Plaintiff's cross motion for summary judgment (as to Counts III, IV, V, and VI)[1] of her complaint, wherein she seeks judgment under the Rhode Island Uniform Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-1, et seq.

## FACTS

On May 8, 2006, nearly three years before this case was filed, Orlando and Elvira Cabrera sold their real estate at 52-54 Daniels Street, Pawtucket, Rhode Island, netting slightly more than $191,000.  Between May 9, 2006, and June 2, 2006, after allegedly paying off all of their existing debt, the Cabrera's transferred approximately $182,000 to their three children and (then) daughter-in-law.  On March 2, 2009, the Debtors filed a joint Chapter 7 petition, and as of that date their combined average monthly income was $1,214, all from Social Security.  Other than these few undisputed facts, the parties disagree markedly on all other material issues, as well as the legal consequences of the Debtors' prior actions.

---

[1]  Although the Trustee has not moved to set aside fraudulent transfers on Counts I and II, she does oppose the Defendants' Motion for Summary Judgment as to all counts of her Complaint.

1

BK No. 09-10758; A.P. No. 11-1018

## DISCUSSION

### I.  The Debtors' Motion

In their Motion for Summary Judgment, the Defendants advance three main arguments, which are addressed below.

Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, entitles the moving party to judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case."  *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986).

The sequence of the cash transfers, which is not in dispute, was completed by June 2, 2006, two years and nine months before the Debtors filed this bankruptcy case.  Section 548 of the Bankruptcy Code allows a "trustee ... [to] ... avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  Hoping to avoid the inevitable result of a straightforward application of § 548, the Trustee argues in opposition to summary judgment that the Debtors somehow concealed the transfers, and that the time limits of § 548 were thereby

2

BK No. 09-10758; A.P. No. 11-1018

equitably tolled. The essence of this argument is that the transfers were not disclosed until the Debtors' § 341 meeting, in May 2009. Plaintiff's Objection to Defendants' Motion for Summary Judgment, at 6. While the implication in the Trustee's statement is perhaps technically factual, the comment (without more) is neither conclusive nor suggestive of mischief, since Question 10 of the Statement of Financial Affairs (SOFA), requires Chapter 7 debtors to disclose only transfers made "within **two years** immediately preceding the commencement of" the case. (Emphasis in the original). Importantly, and quite detrimental to her case, the Trustee is unable or fails to allege any "material fact[s]" relevant to her concealment theory. Responding accurately, but specifically to all questions in the SOFA does not amount to concealment, *per se*, *see In re Cortellesso*, 2011 WL 2414488*3 (Bankr. D.R.I. 2011), and the failure to assert more, leaves the Trustee short of her burden on this score. Accordingly, Defendant's Motion for Summary Judgement on Counts I and II of the Trustee's Complaint is **GRANTED.**

As for the state law counts, Defendants contend that these causes of action, filed by the Trustee on February 24, 2011, were "extinguished four years after the transfer," under R.I. Gen. Laws § 6-16-9, in June 2010, and, therefore, they are entitled to judgment as a matter of law. Memorandum in Support of Defendants'

3

BK No. 09-10758; A.P. No. 11-1018

Motion for Summary Judgment, at 6.   What the Debtors do not address, however, is the Code section which provides that "as long as the applicable state's limitations period has not expired as of the petition date, the trustee can bring a fraudulent conveyance action under §544(b) within the time limitations set forth in §546(a)." [2] *In re Antex, Inc.*, 397 B.R. 168, 174 (1st Cir. B.A.P. 2008). *See also, In re Lanciaux* 76 B.R. 254, 257 (Bankr. D.R.I. 1987) ("Although ... a complaint would be time barred by 11 U.S.C. §548, the trustee could still bring an action under 11 U.S.C. §544, and the Rhode Island Fraudulent Transfer Act").   So, Section 546 gives the Trustee two years from the date of the petition, i.e., until March 2, 2011, to bring a state law fraudulent transfer action, and that is exactly what the Trustee has done.   The Defendants' Motion for Summary Judgment as to Counts III, IV, and V is therefore **DENIED**.

Clearly leaving no stone unturned, the Defendants also request judgment on Counts III, IV, and V on the ground that no creditor

---

[2]  The Court's comment assumes that Debtors' counsel's failure to reference § 546(a) was due either to inadvertence or to his unawareness of the statute.   See R.I Supreme Court Rules of Professional Responsibility, Art. V, Rule 3.3(a) "A lawyer shall not knowingly ... (2) fail to disclose to the tribunal legal authority ... known to the lawyer to be directly adverse to the position of the client."

BK No. 09-10758; A.P. No. 11-1018

existed[3] at the time of the transfers, because they paid all their debts with proceeds from the sale of their house.  In opposition, the Trustee references several "open accounts" listed in the petition.  Whether anything was owed on these accounts is not evident, and no affidavit has been offered by the Defendants.[4] Since the existence of such creditors is a disputed issue of material fact, summary judgment is not appropriate, and the Defendants' motion, based on the asserted, but unsupported, non-existence of a creditor at the time of transfer, is **DENIED** as to Counts III, IV and V.

## II.  Trustee's Motion

The Trustee also requests summary judgment on state law fraudulent transfer grounds, but merely defeating the Defendants' cross motion does not automatically translate to summary judgement for the Trustee.  Rather, she must demonstrate that there are no genuine issues of material fact, and that she, independently, is entitled to judgment as a matter of law.  As stated above, this

---

[3]  The existence of a debtor/creditor relationship at the time of transfer is a requirement under the Rhode Island statute.  *Rohm & Hass Company v. Capuano*, 301 F. Supp. 156,160 (D.R.I. 2004) (citing *Kondracky v. Crystal Restoration*, 791 A.2d 482, 484 (R.I. 2002)).

[4]  The Trustee urges that I adopt the court's ruling in *In re Bushey*, 210 B.R. 95 (6th Cir. B.A.P. 1997), which, under Ohio law, concluded that the mere existence of an "open account," even one with a zero balance, satisfies the requirement that a creditor exist.  This Court is unwilling to make such a determination, on the present record.

5

BK No. 09-10758; A.P. No. 11-1018

Court is not ready to follow *Bushey* for the proposition that an open account, alone, satisfies the Rhode Island requirement that a creditor must exist at the time of transfer.  On its face, the Trustee's argument is problematic.  She says:

> Schedule F identifies the dates in which the Debtors claim the unsecured debts were incurred, primarily, prior to the date the Transfers were made. *It is believed* that many, if not all of the debts may have been incurred after the Transfers. (Emphasis added).

Trustee's Memorandum of Law in Support of Motion for Summary Judgment, at 10.  So, in two sentences the Trustee argues that: (1) a creditor existed at the time of transfer, satisfying the state law requirement, and (2) in the passive voice, says that maybe the debts were not prior to, but "after the Transfers," leaving the issue of the existence of a creditor to speculation by the Court. Summary judgment may not be granted on such speculation.

Finally, and not yet addressed, the question of insolvency at the time of the transfers is an open issue in this case, and the burden there again is on the Trustee. *In re Antex, supra* at 172 (explaining a trustee's burden under Rhode Island fraudulent transfer statutes).  R.I. Gen. Laws §§ 6-16-2; 6-16-4; 6-16-15. Finally, nothing offered by the Trustee shows or creates a presumption of the Debtors' insolvency.  Therefore, the Trustee's

BK No. 09-10758; A.P. No. 11-1018

Motion for Summary Judgment as to the state law fraudulent transfer counts is **DENIED**.[5]

The issues of: (1) the existence of a creditor, and (2) the insolvency of the Debtors at the time of transfer are necessary to the full adjudication of the issues in this dispute.  Therefore, discovery is reopened and extended until February 21, 2012, in order to allow complete discovery on these and any other issues relevant and still viable.  A Joint Pre-Trial Order shall be filed by March 22, 2012, and the matter is scheduled for hearing on April 26, 2012, at 10:00 a.m.

Entered.

_____
Arthur N. Votolato
U.S. Bankruptcy Court

Entered on docket: 1/20/12

---

[5]  Both parties seek summary judgment as to Count VI, Disallowance of Claims under 11 U.S.C. § 502(d).  Since the resolution of that issue depends on the outcome of the Trustee's fraudulent transfer claims, the Court defers ruling at this time.

7