```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

ORLANDO CABRERA                     :   BK No. 09-10758
ELVIRA M. CABRERA                           Chapter 7
        Debtors

- - - - - - - - - - - - - - - - - -x
STACEY B. FERRARA, TRUSTEE          :
        Plaintiff
v.                                  :   A.P. No. 11-1018

ORLANDO R. CABRERA, JR.             :
ELIZABETH C. CABRERA
DANIEL CABRERA                      :
ROSELIA CABRERA
        Defendants
- - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER AVOIDING TRANSFERS

APPEARANCES:

    Peter J. Furness, Esq.
    Attorney for Plaintiff/Trustee
    SINAPI, FORMISANO & COMPANY, LTD.
    100 Midway Place, Suite 1
    Cranston, Rhode Island 02920

    Robert B. Jacquard, Esq.
    Attorney for Defendants
    231 Reservoir Avenue
    Providence, Rhode Island 02907

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 09-10758; A.P. No. 11-1018

Heard on the Trustees complaint brought pursuant to the Rhode Island Uniform Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-1, et seq., and 11 U.S.C. § 544(b) to recover allegedly fraudulent transfers to insiders, by the Debtors. Defendants Orlando Cabrera, Jr. ("Orlando, Jr."), Daniel Cabrera ("Daniel") and Elizabeth Cabrera ("Elizabeth") are the children of the Debtors. Defendant Roselia Cabrera is the former wife of Defendant Daniel Cabrera.

## BACKGROUND AND TRAVEL

On May 8, 2006, nearly three years before this bankruptcy was filed, Orlando and Elvira Cabrera sold their real estate at 52-54 Daniels Street, Pawtucket, Rhode Island ("the Property"), netting about $191,000, and paid off some, but not all, of their unsecured debt. Shortly thereafter, between May 9, 2006, and June 2, 2006, the Cabreras transferred the remaining proceeds of the sale, approximately $182,000, to their three children, and Roselia Cabrera. On March 2, 2009, when they filed this joint Chapter 7 case, the Cabreras' (now "the Debtors") combined monthly income was $1,214, all from Social Security. On January 20, 2012, the Court denied the Trustee's motion for summary judgment on fraudulent transfer grounds because there were material issues of fact still in dispute. Those issues are: (1) whether the Debtors had unsecured creditors at the time of the transfers; and (2) if there were such

1

BK No. 09-10758; A.P. No. 11-1018

creditors, whether the Debtors were insolvent or were rendered insolvent as a result of the questioned transfers.

## FINDINGS OF FACT

At the trial on the merits of this dispute, the Court heard from Orlando Cabrera, Sr., Daniel, Orlando, Jr., and Elizabeth Cabrera. Based on the testimony, the undisputed facts in the Joint Pre-trial Order ("JPTO"), and the exhibits introduced in evidence, the Court makes its findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

1. Orlando, Sr., and his wife Elvira, the Debtors, were the sole owners of the Property at the time of the questioned transfer. There is no credible evidence[1] that any of the Defendants had any interest in the Property that would entitle them to a share of the sale proceeds.

2. The Debtors, who realized $191,099 from the May 8, 2006, sale of the Property, used part of said funds to pay "some, but not all, of their unsecured debts."

3. Between May 9, 2006, and June 2, 2006, the Debtors transferred more than $182,000 to the Defendants as follows: (a) $43,000 to Roselia (which was used for Daniel's benefit, as well); (b) $42,000 to Orlando, Jr.; and (c) $97,000 to Elizabeth in three

---

[1] The Defendants' testimony was self-serving, clearly biased and well rehearsed, but was not, in the Court's opinion, worthy of belief.

2

installments, on May 19, May 22, and June 2, 2006. In addition, the Debtors made a $3,000 down payment to purchase property at 19 Rosemere Road, Pawtucket, Rhode Island, which is owned jointly by Elizabeth and Orlando, Jr.

4. Debtors did not receive reasonably equivalent value for these transfers.[2]

5. Defendants used the funds transferred to them: (a) to purchase the Rosemere Street property;[3] (b) to purchase the property on Diana Drive, Pawtucket, Rhode Island;[4] (c) to purchase construction materials for the Rosemere property; (d) to purchase other miscellaneous unidentified goods and services; and (e) for payment of general personal and living expenses.

6. The Debtors reside with Elizabeth in the Rosemere Street property but have no right, title or interest in either that property or in the Diana Drive property.

7. After the transfers to the Defendants, the Debtors had just $2,754 left in their Pawtucket Credit Union account. They had no other substantial assets at that time.

---

[2] This very material fact is admitted in the JPTO.

[3] Owned jointly by Elizabeth and Orlando, Jr.

[4] This property was purchased jointly by Daniel and Roselia. Subsequently, Roselia conveyed her interest to Daniel "for no consideration."

BK No. 09-10758; A.P. No. 11-1018

8. On June 2, 2006, Debtors owed money to Sears, GE/Lowes, Home Depot, and Pawtucket Credit Union totaling $5,451. By June 22, 2006, the amount owed to Home Depot alone had increased to $6,936.[5]

9. Subsequent to the divestiture of virtually all of their property, the Debtors continued to incur additional debt, and by the time they filed for bankruptcy they had accumulated unsecured debts in excess of $47,000. The Debtors' schedules include a debt owed to Home Depot, a creditor in existence at the time of the transfers to the Defendants.

10. When this case was filed, the Debtors' only source of income was Social Security benefits in the amount of $1,214 per month.

11. At the time of the transfers, the Debtors' obligations clearly exceeded the fair value of the assets in their names.

## DISCUSSION

Rhode Island General Law § 6-16-5(a) provides that:

> A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at the time, or the debtor became insolvent as a result of the transfer.

---

[5] Exhibit 10, p.4

4

BK No. 09-10758; A.P. No. 11-1018

To meet her burden under this statute the Trustee must show that: (1) a creditor with a claim existed at the time of the transfer; (2) the Debtors made a transfer of property; (3) the Debtors did not receive reasonably equivalent value in exchange; and (4) the Debtors were either insolvent or rendered insolvent by the transfer. *Richardson v. Preston (In re Antex, Inc.),* 397 B.R. 168,172 (1st Cir. B.A.P. 2008). Two of these elements, the transfers themselves and the lack of value in exchange, are admitted facts in the JPTO. In addition I find and conclude, based on the record, that unsecured creditors of the Debtors existed at the time of the transfers.

The Debtors contend that they were not insolvent, arguing that their assets exceeded their liabilities *before* the final transfer on June 2, and that the Court should take a solvency snapshot of each piecemeal transfer in the Debtors' *distribution of assets plan*, before going on to examine the next transfer. The Debtors have provided neither legal authority nor any persuasive reason for the Court to adopt such an argument. Indeed, at their summation the Debtors conceded that even under their generous analysis of the solvency issue, they were in a slight deficit position of assets versus liabilities.

These transfers were made over a three week period and were clearly part of a scheme to distribute the Debtors' assets in favor

5

BK No. 09-10758; A.P. No. 11-1018

of their children, to the detriment of creditors. And the Defendants' contention that their actions should be examined piecemeal, rather than looking at the twenty-two day transfer period as a blatant giveaway, has no logical appeal, it has no support in law or equity, and is rejected.

Accordingly, I find that the Trustee has satisfied her burden under R.I. Gen. L. § 6-16-5(a) and § 544 of the Code, and should, as we speak, be in the process of recovering said transfers under 11 U.S.C. § 550.[6]

Therefore, Judgment should enter for the Trustee as follows:

1. The transfers are avoided and preserved for the benefit of the estate:

   a. Against Orlando Cabrera, Jr., in the amount of $42,000.

---

[6] While this Court is not unmindful of the waves created by *Stern v. Marshall*, 564 U.S.__,131 S.Ct. 2594(2011), neither party has questioned our authority to adjudicate this proceeding as a core matter, 28 U.S.C. § 157(a)(2)(H) ("proceedings to determine, avoid or recover fraudulent conveyances"), although some of the language of the majority *might* call that power into question.  I prefer to follow the majority's statement that "the question presented here [in *Stern*] is a 'narrow' one ... [and] ... our decision today does not change all that much."  Since the instant dispute clearly fits the definition of a core proceeding established by Congress, and since the majority itself advised that *Stern* is to be read narrowly, this Court will not make the proposed hysteria driven leap being advocated by certain *Stern v. Marshall* analysts. See David P. Leibowitz, *Stern v. Marshall: A Constitutional Conundrum*, Am. Bankr. L.J., Oct. 2011 at 36, 65 ("*Stern* will cause considerable consternation ... in bankruptcy circles for some time ... [as m]atters that had been heard in bankruptcy court will now be subject to forum-shopping in the district and state courts.").

BK No. 09-10758; A.P. No. 11-1018

    b.   Against Elizabeth Cabrera in the amount of $97,000.

    c.   Against Daniel Cabrera and Roselia Cabrera in the amount of $43,000.

    Enter.

                                  Arthur N. Votolato  
                                    U.S. Bankruptcy Court

Entered on docket: 6/1/12